IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DIANA M. RIPS                                                                                          PLAINTIFF

VS.                                      CIVIL NO. 05-3062

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Diana Rips, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disabled widow's benefits disability insurance benefits under the provisions of Title II of the Social Security Act (the "Act").

**Procedural Background:**

The application now before this court was filed on September 26, 2002, alleging an in ability to work since February 1, 2001,[1] due to osteoarthritis, chronic obstructive pulmonary disease ("COPD"), depression, and an organic brain dysfunction. (Tr. 15, 63-65). An administrative hearing was held on February 11, 2004. (Tr. 28). Plaintiff was present and represented by counsel.

At the time of the hearing, plaintiff was fifty-six years old and possessed the equivalent of a high school education with some vocational training in the area of food services. (Tr. 14, 295-297). Her past relevant work ("PRW") was as a sewing machine operator. (Tr. 14, 88-95).

On May 25, 2004, the Administrative Law Judge ("ALJ"), issued a written decision finding that plaintiff's impairments were severe, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20). After discrediting

---

[1]Plaintiff initially alleged January 1, 1994, as her onset date. (Tr. 63-65). However, this date was later amended to February 1, 2001. (Tr. 68).

plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity (hereinafter "RFC"), to perform light work, requiring only occasional crouching, kneeling, and crawling and no climbing of ropes, ladders, or scaffolds. (Tr. 19). Further, he determined that plaintiff should be restricted to no more than occasional exposure to dust, fumes, or pollutants. As this did not preclude plaintiff from performing her PRW, the ALJ determined that plaintiff could return to work as a sewing machine operator, as that position was previously performed by plaintiff. (Tr. 19).

On September 13, 2005, the Appeals Council declined to review this decision. (Tr. 5-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were afforded the opportunity to file appeal briefs but plaintiff has chosen not to do so. (Doc. # 8). Accordingly, the case is now ready for decision.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

However, the court's review is not simply "a rubber stamp for the [Commissioner's] decision and involves more than a search for evidence supporting the [Commissioner's] findings." *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984). Indeed, "[t]o determine whether existing evidence is substantial, '[the court] must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it.'" *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (quoting *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993)). In addition, the court's review of the decision must include a determination as to whether the proper legal standards were applied. *See Nettles v. Schweiker*, 714 F.2d 833, 835-36 (8th Cir. 1983). Thus, this court's review is both limited and deferential to the agency. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996).

A claimant for widow's disability insurance benefits has the burden of establishing that she is at least fifty years old, is the widow of a wage earner who died fully insured, and is disabled. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. The disability must have commenced within a specified period; in this case, by February 10, 2001, seven years from the month of the insured wage earner's death. 42 U.S.C. § 402 (e)(5); 20 C.F.R. § 404.335.

The law defines disability as an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R § 404.1505(a); 42 U.S.C. § 423(d).[2] To meet this definition, plaintiff must show that she suffers from a severe impairment(s) that renders her unable to return to her PRW or any other substantial gainful work that exists in the national economy. 20 C.F.R § 404.1505(a). If her impairment(s) does

---

[2]We note that there are different rules for determining the disability of widows who are seeking payment of benefits for months prior to January 1991. 20 C.F.R. §§ 404.1505(b); 404.1577-404.1579. However, plaintiff's petition does not state a claim for benefits prior to January 1991.

not meet or medically equal a listing, then the ALJ must assess her RFC and use this to determine whether she can return to her PRW. *Id*.

**Discussion:**

Of particular concern to the undersigned is the fact that the ALJ determined plaintiff's RFC without obtaining an RFC assessment from plaintiff's treating physician. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the medical evidence reveals as follows. On February 27, 1998, plaintiff saw Dr. Stephen R. Maes with complaints of dyspnea, a cough, arthralgias, myalgias, and anxiety. (Tr. 174). The doctor noted plaintiff's history of osteoarthritis. A physical examination revealed mild wheezing on expiration in the base of the right lung but no musculoskeletal limitations. Dr. Maes

prescribed a metered dose Combivent inhaler for her asthma and a low dosage of Xanax to help alleviate plaintiff's anxiety. (Tr. 174).

On March 6, 1998, plaintiff was treated for shortness of breath and wheezing. (Tr. 173). She was noted to be in mild respiratory distress with mild expiratory wheezing. A chest x-ray revealed no acute abnormality. (Tr. 172). As such, Dr. Maes prescribed a Depo-Medrol injection and Keflex. (Tr. 173). By March 13, 1998, plaintiff's dyspnea had subsided. (Tr. 173). Because she continued to be hoarse, Dr. Maes prescribed Propulsid. He also ordered an ENT consult. (Tr. 173).

On March 20, 1998, plaintiff reported that her asthma had improved. (Tr. 171). However, she complained of pain in her left shoulder and right hip. Dr. Maes prescribed Lodine. (Tr. 171).

On April 6, 1998, plaintiff was again complaining of dyspnea and a cough. (Tr. 171). Dr. Maes noted that she was in mild respiratory distress. An examination revealed expiratory bilateral wheezing. For this, he prescribed two puffs of Proventil and a Depo-Medrol injection. (Tr. 171). By April 17, 1998, plaintiff was reportedly feeling "much better." (Tr. 170).

On May 20, 1998, plaintiff's asthma had reportedly improved. (Tr. 171). Her reflux symptoms were also improving with the use of Propulsid. However, plaintiff complained of pain in her left shoulder and right hip. (Tr. 171). A physical exam was unremarkable. Accordingly, Dr. Maes prescribed Claritin-D, Combivent, and Lodine XL. (Tr. 171).

On June 15, 1998, plaintiff returned with complaints of shortness of breath and a cough. (Tr. 170). She indicated that she had been using her inhaler on a frequent basis. Although her physical examination was normal, Dr. Maes prescribed a Lincocin injection and Singulair. (Tr. 170).

On July 13, 1998, the Singulair was reportedly working well. (Tr. 168). However, plaintiff complained of shortness of breath, fever, nausea, and vomiting. Dr. Maes diagnosed her with dyspnea, asthma, and cough. He then administered an Ancef injection. (Tr. 168).

After not having seen Dr. Maes for nearly one year, plaintiff returned to his office on August 9, 1999. (Tr. 167). She stated that she had not been taking the Singulair and was experiencing some shortness of breath. An examination revealed mild scattered expiratory wheezes. Dr. Maes directed her to resume her previous medications and gave her samples of Serevent and Singulair. (Tr. 167). By September 2, 1999, plaintiff reported feeling "much better." (Tr. 167).

On November 10, 1999, plaintiff reported more frequent asthma attacks. (Tr. 165). Dr. Maes directed plaintiff to continue her steroid inhaler and prescribed a Serevent inhaler. He also detailed the side effects of Singulair. (Tr. 165).

On January 12, 2000, plaintiff returned to Dr. Maes's office with complaints of a cough, congestion, and drainage. (Tr. 164). A physical exam was unremarkable and plaintiff's asthma was noted to be stable. However, she was diagnosed with acute sinusitis and bronchitis. Dr. Maes then administered an Ancef injection. (Tr. 164).

On September 6, 2000, plaintiff was treated for acute sinusitis, asthma, and pain in her ankles and hips. (Tr. 162). An examination revealed some mild bilateral lower quadrant tenderness. Accordingly, plaintiff was given an injection of Ancef and Decadron. (Tr. 162).

On September 25, 2000, plaintiff complained of a productive cough. (Tr. 160). On examination, Dr. Maes noted scattered rhonchi that cleared with her cough. Plaintiff was diagnosed with acute bronchitis, asthma, and osteoarthritis. Dr. Maes gave her an Ancef injection and directed her to continue her current medications. (Tr. 160).

On November 20, 2000, Dr. Maes reported that plaintiff's asthma was stable. (Tr. 160). Although plaintiff also complained of joint pain, a physical examination revealed a full range of motion in the neck and extremities with no noted neurological deficits. However, plaintiff was given a Toradol injection for pain. (Tr. 160).

On February 14, 2001, plaintiff again received a Toradol injection for complaints of joint pain. (Tr. 159). Then, on February 21, 2001, she sought treatment for dyspnea and a cough. (Tr. 159). Records indicate that plaintiff had a history of fibromyalgia for which she was taking Ultram and Vioxx. A physical exam revealed inspiratory and expiratory wheezes, but no other abnormalities. A full range of motion was noted in the neck and extremities. Accordingly, Dr. Maes diagnosed plaintiff with dyspnea, acute bronchitis, COPD with asthma, and joint pain. She was given an Ancef and Decadron injection and told to increase her dosage of Elavil. (Tr. 159).

On March 28, 2001, plaintiff was treated for dyspnea, congestion, drainage, cough, and chronic sinusitis. (Tr. 158). Plaintiff was given an injection of Rocephin and a prescription for Prilosec. Further, Dr. Maes told her to discontinue the Reglan and stop smoking. (Tr. 158).

Aside from the RFC assessments of two non-examining, consultative physicians, the ALJ had no other evidence to show plaintiff's exertional and/or non-exertional limitations. We note that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). We are also cognizant of the ALJ's obligation to address a precise inquiry to the plaintiff's treating physician, when a treating physician has not issued an opinion which can be adequately related to the disability standard. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). Given the fact that plaintiff sought treatment for pain and asthma related illnesses on numerous occasions, coupled with the fact that the medications prescribed only seemed to treat her impairment for a limited period of time, we believe that the ALJ should have requested an RFC assessment from plaintiff's treating physician, Dr. Maes. Because he failed to do so, we believe remand is required to allow the ALJ to obtain an assessment from this physician.

Therefore, on remand, the ALJ is directed to address interrogatories to Dr. Maes, asking him to review plaintiff's medical records; complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 20th day of September 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE